# United States Court of Appeals for the Federal Circuit

---

**IN RE MARK T. DINSMORE AND DAVID J. CARUSO**

---

2013-1637

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Serial No. 12/137,662.

---

Decided: June 10, 2014

---

ORLANDO LOPEZ, Burns & Levinson LLP, of Boston, Massachusetts, argued for appellants.

COKE MORGAN STEWART, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With her on the brief were NATHAN K. KELLEY, Deputy General Counsel for Intellectual Property Law and Solicitor, and KRISTI L. R. SAWERT, Associate Solicitor.

---

Before TARANTO, BRYSON, and HUGHES, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Mark Dinsmore and David Caruso ("applicants"), who are the inventors named in U.S. Patent No. 7,236,568, applied to reissue the '568 patent under 35 U.S.C. § 251. During the patent's prosecution, they had recorded a

terminal disclaimer in response to rejections for obvious-ness-type double patenting. The terminal disclaimer declares that the '568 patent "shall be enforceable only for and during such period" as it is commonly owned with the patent that underlay the double-patenting rejections. In their reissue application, the applicants sought to modify the recorded terminal disclaimer to delete the common-ownership provision, and to modify the claims that gave rise to the disclaimer, because the two patents are not and never have been commonly owned. An examiner in the Patent and Trademark Office rejected the reissue application, and the Patent Trial and Appeal Board affirmed. *Ex parte Dinsmore*, No. 13-6879, 2013 WL 5274029 (Patent Tr. & App. Bd. June 3, 2013). Because the applicants have not identified an "error" within the meaning of section 251, we affirm.

BACKGROUND

The '568 patent, entitled "Miniature x-ray source with improved output stability and voltage standoff," issued on June 26, 2007, with Mr. Dinsmore and Mr. Caruso listed as inventors and twX, LLC as the sole assignee. During prosecution, the examiner, in addition to rejecting all the filed claims on several prior-art grounds, had rejected claims 1 and 18-20 of the original application—which eventually became issued claims 1, 16-17, and 21 of the '568 patent—"on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims . . . of U.S. Patent No. 6,658,086," J.A. 553, a 2003 patent listing Mr. Dinsmore as the sole inventor and a firm called Carl Zeiss as the sole assignee. The applicants responded by filing a terminal disclaimer over the '086 patent, disclaiming any term for the '568 patent beyond the expiration date of the '086 patent, and narrowing all of the filed claims to overcome other rejections that the examiner had made under 35 U.S.C. §§ 102 & 103. The '568 patent then issued.

To file the terminal disclaimer, the applicants completed and submitted the PTO's terminal-disclaimer form, PTO/SB/26, entitled "Terminal Disclaimer To Obviate A Double Patenting Rejection Over A 'Prior' Patent." As required by 37 C.F.R. § 1.321(c)—which addresses terminal disclaimers "filed to obviate [a] judicially created double patenting" rejection—the applicants' terminal disclaimer declares that "any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned." J.A. 579. It says nothing about who then actually owned, or will in the future own, the '086 patent that gave rise to the disclaimer. In filing the disclaimer, the applicants stated: "The enclosed terminal disclaimer in compliance with 37 CFR 1.321(c) overcomes the obviousness-type double patenting rejection." J.A. 575. In allowing the claims, the examiner said that the disclaimer had been reviewed, accepted, and recorded.

On June 12, 2008, the applicants applied to reissue all claims of the '568 patent under 35 U.S.C. § 251, seeking simply to remove the recorded terminal disclaimer without substituting a new one or amending any of the claims. Implementing section 251's precondition of "error" for reissue, a PTO regulation required the applicants to file a reissue declaration that, among other things, identified "[a]t least one error upon which reissue is based." 37 C.F.R. § 1.175(a)(1). The applicants stated in their (initial) declaration that they

> inadvertently and without deceptive intent filed a Terminal Disclaimer over [the '086 patent], which was not commonly owned by the owners of [the '568 patent] currently at issue.

J.A. 33. In a non-final office action, the examiner denied the reissue application "as being based upon a defective reissue declaration," "because the error which is relied

upon . . . is not an error upon which a reissue can be based." J.A. 51.

In October 2009, in response to the non-final rejection, the applicants petitioned the PTO Commissioner to permit them to replace the recorded terminal disclaimer with one identical in every material respect except that it dropped the original provision (required by PTO regulation) that the '568 patent could be enforced only when commonly owned with the '086 patent. Thus, the term of the '568 patent would remain tied to the expiration date of the '086 patent. In March 2011, the PTO denied the petition, and then twice more denied the same request for relief from the applicants; the applicants did not seek judicial review of those denials.

Meanwhile, on October 27, 2009, the applicants had filed a response to the non-final rejection, under 37 C.F.R. § 1.111. They submitted a supplemental reissue declaration, which changed their statement of the "error upon which reissue is based" to read as follows:

> Original [application] claims 1 and 18-20 were rejected on the ground of non-statutory obviousness-type double patenting and allowed based on an ineffective, invalid terminal disclaimer. The allowance of issued claims 1 and 18-20 [*sic*] based on the original claims was in error.

J.A. 75. They also cancelled originally filed claims 1 and 18-20 (issued claims 1, 16-17, and 21) and simultaneously introduced identical claims as "new" claims 22-25. In April 2011, the examiner, noting that the revised terminal disclaimer was not accepted, denied the reissue application. The applicants then tried again, this time cancelling the new claims 22-25, but the examiner issued a final rejection in September 2011.

On January 30, 2012, the applicants filed a Request for Continued Examination, during which they amended

their reissue application in three relevant ways. First, they cancelled all of the issued claims and added new, narrower claims—identical to the cancelled claims except for a single, added limitation. They did so, they said, "as a hedge against unenforceability," J.A. 234, presumably because they believed the narrower claims sufficient to overcome the obviousness-type double-patenting rejection without a terminal disclaimer. Second, and on that apparent premise, they again submitted a modified terminal disclaimer that retained the term limit of the '568 patent as issued but eliminated the declaration limiting enforceability to times of common ownership— presumably now treating as inapplicable the regulatory subsection, 37 C.F.R. § 1.321(c), that requires such a declaration "when filed to obviate [an obviousness-type] double patenting rejection." Finally, they submitted another (the third) reissue declaration, stating:

> Original [application] claims 1 and 18-20 were rejected on the ground of non-statutory obviousness-type double patenting and allowed based on an ineffective, invalid terminal disclaimer. The invalid terminal disclaimer renders the patent unenforceable. The patentee presents narrower claims based on claims that were not rejected on that basis.

J.A. 180. Eventually, the examiner issued a final office action rejecting all of the pending claims in the reissue application, once again because "the error identified in the [reissue] declaration is not an error that can support reissue." J.A. 246.

The applicants appealed to the Board, which affirmed the examiner, because the "voluntary and intentional filing of a terminal disclaimer to overcome a non-statutory obviousness-type double patenting rejection during prosecution of the original patent is not an 'error' correctible by reissue under 35 U.S.C. § 251." *Ex parte Dinsmore*, No.

13-6879, 2013 WL 5274029, at *9 (Patent Tr. & App. Bd. June 3, 2013).

The applicants timely appealed to this court, which has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

The applicants argue that, because the '568 and '086 patents are not and never have been commonly owned, the recorded terminal disclaimer was "an ineffective, invalid terminal disclaimer" and its filing therefore was an "error" within the meaning of the reissue statute, 35 U.S.C. § 251.  Section 251, at the relevant time, read:

> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.[1]

---

[1]    The Leahy-Smith America Invents Act amended this language by striking "without any deceptive intention," a change that neither party argues is material to deciding this case.  *See* Pub. L. No. 112-29, § 20, 125 Stat 284, 333-34 (2011).  The amendments to section 251 took effect on September 16, 2012, *see id.* § 20(l), after the applicants both filed their reissue application (in June 2008) and requested continued examination of that application (in January 2012).

"Determining whether an applicant has met the statutory requirements of 35 U.S.C. § 251 is a question of law, which we review *de novo*." *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997).

We affirm the Board's ruling because the applicants have not identified an "error" underlying the choices made in the original patent that they now seek to revise. We begin with the one clear assertion of error in the applicants' reissue declarations: that the recorded terminal disclaimer was ineffective or invalid. That assertion, however, is simply incorrect in the most straightforward sense.

The terminal disclaimer promises that the '568 patent "shall be enforceable only for and during such period that it and the prior patent [*i.e.*, the '086 patent] are commonly owned." J.A. 579. That promise, which is clear on its face, can readily be given effect: the patent will not be enforced except when owned by the owner of the '086 patent. And the applicants, by filing the disclaimer, achieved the immediate effect of overcoming the obviousness-type double-patenting rejection.

At the same time, the terminal disclaimer was valid. The applicants identify nothing missing that was required or anything included that was forbidden. Under the relevant PTO regulation, "to obviate judicially created double patenting in a patent application" a terminal disclaimer must "[i]nclude a provision that any patent granted on that application . . . shall be enforceable only for and during such period that said patent is commonly owned with the . . . patent which formed the basis" for the rejection. 37 C.F.R. § 1.321(c). The terminal disclaimer at issue here did just that: it made the required promise about what would happen *if* the two patents at issue were ever separately owned. It thereby fulfilled a purpose of the bar on obviousness-type double patenting—"to prevent multiple infringement suits by different assignees

asserting essentially the same patented invention." *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013).

At bottom, therefore, the applicants can only be arguing, more broadly, that the disclaimer was "ineffective" in the sense that it did not produce a patent they could actually enforce by themselves (without common ownership) and that they erred in producing that result (which they deem to be inoperativeness) by choosing to file the terminal disclaimer in order to include in the '568 patent, in their final form, the four claims that led to the obviousness-type double-patenting rejection. This argument, however, is an insufficient basis for reissue, even if the condition of present inability to enforce constitutes inoperativeness within the meaning of section 251. It is ultimately no more than a statement of a now-regretted choice, because the applicants identify no cognizable false or deficient understanding of fact or law that underlay the choice. This is not "error" as required by section 251.

Section 251 requires not only that the original patent be "wholly or partly inoperative or invalid," and that the inoperativeness or invalidity be by reason of a defective specification or drawing or unduly broad or narrow claiming, but that "error" be the cause of the infirmity. Section 251 often applies to applicants' choices, *i.e.*, their deliberate decisions about what to say in their patents, not just slips of the pen. But not every choice that produces inoperativeness or invalidity by reason of a specification, drawing, or claiming problem (within the meaning of section 251) can qualify. Only choices based on "error" count.

Our cases indicate that, for purposes of narrowing reissue-qualifying choices to those involving "error," it is important whether deficient understandings, by the applicants or their agents, gave rise to the patenting choice that reissue is being invoked to correct. In the authorities that the applicants here feature, false or

inadequate understandings about then-existing facts or law evidently underlay the aspects of the original patent sought to be altered by reissue.[2]  Most reissue cases involve no dispute about this basis of "error": the court has noted that the typical situations are (for a broadening reissue) the "post-issuance discovery of attorney error in understanding the scope of the invention" and (for a narrowing reissue) the "belated discovery of partially invalidating prior art." *In re Amos*, 953 F.2d 613, 616 (Fed. Cir. 1991); *see In re Youman*, 679 F.3d 1335, 1342 (Fed. Cir. 2012).  On the other hand, we have held reissue unavailable in several cases where the applicants identified no deficient understanding behind a choice, not even (as is common) asserting newly noticed *potential* problems as to claim breadth or narrowness or other matters affecting the aspects of the original patent that are the subject

---

[2]     *See In re Tanaka*, 640 F.3d 1246, 1247-48 (Fed. Cir. 2011) (applicant's declaration stated that he misunderstood "the process of claiming according to U.S. practice"); *Medrad, Inc. v. Tyco Healthcare Grp. LP*, 466 F.3d 1047, 1052-53 (Fed. Cir. 2006) (applicant did not realize that a supplemental declaration was required); *In re Oda*, 443 F.2d 1200, 1206 (CCPA 1971) (reissue declaration, made by all four inventors, stated that errors were made while translating from corresponding Japanese applications); *see also Grant v. Raymond*, 31 U.S. 218 (1832) (allowing correction of a patent where the inventor mistakenly thought specification adequately described invention); *In re Rosuvastatin Calcium Patent Litigation*, 703 F.3d 511 (Fed. Cir. 2012) (reissue approved where applicants originally claimed too broadly after not properly reacting to invalidating prior art, with the error coming because of "chaos, confusion, and inexperience," "lack of legal training" in the patent department, "the changing and limited personnel within that department," and "unintentional miscommunications" between personnel).

of reissue.  In such cases, the reissue application was held inadequate as being no more than an effort to reverse a later-regretted choice made in obtaining the original patent.[3]

A focus on the understandings behind a patentee's choices during the patenting process may not resolve all "error" issues.  But that focus suits this case.  Here, the applicants have not identified any deficient understanding as leading to the issuance of original claims 1, 16-17, and 21 with the terminal disclaimer.

Thus, the applicants simply have not alleged or shown that they had a mistaken belief as to the invalidity of those claims on the cited ground of obviousness-type double patenting in the absence of the disclaimer or, therefore, the choice they faced: cancel or sufficiently modify those claims to avoid the rejection; or file the disclaimer.  They have not alleged or shown that they did, let alone reasonably could, misunderstand the plain meaning of the disclaimer.  They also have not alleged or shown that their choice in favor of filing the disclaimer

---

[3]    *See In re Serenkin,* 479 F.3d 1359, 1364 (Fed. Cir. 2007) (denying reissue where applicant was "fully alert" to the underlying facts and still "intentionally and knowingly surrendered his right to a claim of priority"); *In re Mead*, 581 F.2d 251, 257 (CCPA 1978) (no cognizable error where applicant "knew" or at least "should have known" of intervening-art risk of choice to break chain of copendency); *In re Orita*, 550 F.2d 1277, 1280 (CCPA 1977) (where applicant knowingly acquiesced in restriction, no error in resulting patent; later failure "to timely file a divisional application covering the originally non-elected subject matter" immaterial to issued patent). *See also Miller v. Bridgeport Brass Co.*, 104 U.S. 350, 355 (1881) (reissue "can only be done when an actual mistake has occurred; not from a mere error of judgment").

resulted from any mistaken belief that the '568 and '086 patents were in fact commonly owned. The applicants never declared, and do not show here, that they believed that such common ownership existed when they filed the terminal disclaimer to obtain the '568 patent.

From all that appears, the applicants—knowing that the patents were not commonly owned—intentionally surrendered a possible right (the ability to obtain all or some of the '568 patent claims in a form enforceable independently of the '086 patent) in exchange for a benefit (overcoming an obviousness-type double-patenting rejection of several of the proposed claims). *See, e.g.*, J.A. 575 (arguing to the examiner that the "terminal disclaimer in compliance with [37 C.F.R. § 1.321(c)] overcomes the obviousness-type double patenting rejection"). On the record of this case, applicants are ultimately seeking simply to revise a choice they made, not to remedy the result of a mistaken belief. Theirs is not an error remediable under the reissue statute.

The applicants argue otherwise by stating that a "terminal disclaimer is akin to a contract" and that "the incorrect terminal disclaimer . . . suffers from antecedent impossibility," with the "modern designation of antecedent impossibility being either mutual mistake or unilateral mistake." Appellants' Brief at 9-10. But the applicants gain nothing from this argument. "A mistake is a belief that is not in accord with the facts," Restatement (Second) of Contracts § 151, and nowhere do applicants claim that they filed the terminal disclaimer based on such a belief. In fact, to the extent that the applicants were to argue (though they do not) that their error was in predicting the future behavior of the owner of the '086 patent, the invocation of mutual-mistake law would undermine, rather than aid, their case. *See id.* Comment a ("A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here."); *Lakeshore Eng'g Servs., Inc. v.*

*United States*, 2014 WL 1394949, at \*8 (Fed. Cir. Apr. 11, 2014).

The reissue application here does not meet the "error" requirement of section 251.  We therefore need not address broader questions about the intersection of reissue standards and terminal disclaimers.

CONCLUSION

The Board's decision rejecting the application for reissue is affirmed.

**AFFIRMED**